**Affirmed and Memorandum Opinion filed January 24, 2012.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-11-00283-CR

---

**TERRAL TAWON MURRAY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1262906**

---

## M E M O R A N D U M   O P I N I O N

Appellant Terral Tawon Murray appeals his conviction for capital murder on the grounds that an inculpatory statement admitted before the jury was involuntary. We affirm.

### BACKGROUND

In March 2009, a Houston Police Department ("HPD") officer was dispatched to a report of a suspicious vehicle in the parking lot of a flea market and shopping center. He arrived at the location and located the vehicle. When he ran the license plate, he learned

the vehicle belonged to Joseph Bivens, Jr., who had been reported missing two days before. The bodies of Bivens and his cousin, Deandre Goodson, were found decomposing in the vehicle. HPD Homicide Sergeant Eli Cisneros responded to the scene and began investigating the deaths of Bivens and Goodson.

Cisneros discovered that appellant's cell phone number was the last one called by Goodson's phone. Cisneros contacted appellant, and appellant agreed to come into HPD homicide division to give a videotaped statement on March 20, 2009. During this interview, Cisneros and appellant discussed the law of parties in Texas. Appellant indicated that he understood that "in Texas I guess everybody goes down." Cisneros responded that it depends on how much "cooperation" is involved. This interview produced no leads for the investigation. The investigation was transferred to other HPD officers, who were unable to develop any suspects.

A little over a year later, Cisneros became the lead investigator again and returned to the only lead they had: the phone call to appellant from one of the decedent's phones. Examining appellant's cell phone records, Cisneros discovered that appellant had been untruthful about his location when the offense occurred. Cisneros contacted appellant, and appellant again agreed to come to the homicide division for another videotaped interview. During this interview on May 7, 2010, appellant implicated two others in the deaths of Bivens and Goodson and said that he had witnessed part of the offense, but left before they were killed. Appellant told Cisneros that he would call Cisneros over the weekend with these individuals' names and agreed to come back to the division to show Cisneros where the offense had occurred.

Appellant contacted Cisneros and told him that Kendrick Lewis and Jeremy Portier had been involved in the deaths of Bivens and Goodson. On May 10, 2010, appellant came to the HPD homicide division to direct Cisneros to the location where the murders had occurred. The conversation between appellant, Cisneros, and his fellow officer, Ferguson, on the drive to the location and at the location was audio-recorded. Cisneros indicated to appellant that he could have had either appellant or his

2

girlfriend/common-law wife arrested for making false statements, but had not because appellant was cooperating with the investigation. It is undisputed that during each of these interactions with police, appellant was considered a witness, not a suspect, in the deaths of Bivens and Goodson. Appellant voluntarily came to the HPD station for each interview, was never in custody, and left after each interview.

Cisneros contacted appellant again on May 12, and appellant agreed to come into the station with more information. Appellant returned to the homicide division and was again interviewed on videotape by Cisneros. About halfway through this interview, appellant implicated himself as a party to the deaths of Bivens and Goodson by stating that he had used a gun to threaten one of the victims when an altercation about a drug deal started. He stated that he saw Lewis and Portier bind Bivens and Goodson with duct tape and drag them into another room of the apartment. He also admitted that he saw Lewis put a bag over Goodson's head. He further implicated himself when he admitted that he helped move the bodies out of the location where the offense occurred. After this interview, Cisneros arrested appellant.

Appellant was indicted for capital murder on August 10, 2010. Appellant filed a motion to suppress his fourth statement. The trial court held a hearing on his motion on March 10, 2011. During this hearing, appellant agreed that the interviews were non-custodial and asserted that he gave the fourth statement only because the police made promises of leniency to him. Cisneros testified regarding the four interviews and stated that he made no promises to appellant during the fourth interview, in which appellant inculpated himself. Cisneros admitted that he had encouraged appellant to cooperate and tell the truth. Cisneros further stated that he agreed to help appellant because appellant was concerned about his safety as a witness to the offense.

At the close of the hearing, the trial court concluded that "[n]o officers threatened, coerced, intimidated or induced the defendant to give any of his statements" and denied the motion to suppress. After a trial, a jury found appellant guilty of the charged offense,

3

and the trial court sentenced him to life without parole in the Texas Department of Criminal Justice, Institutional Division. This appeal timely followed.

## ANALYSIS

In a single issue,[1] appellant asserts that his fourth statement, in which he inculpated himself, was involuntary because (1) Cisneros misrepresented the law of parties to appellant during the first interview and (2) Cisneros and Ferguson made implied promises of leniency during appellant's first and third statements.[2] Appellant did not present the first argument to the trial court. Accordingly, he has failed to preserve any error on this issue, and it is overruled. *See* Tex. R. App. P. 33.1(a). We thus consider only whether any "implied promises of leniency" made during appellant's first and third statements rendered appellant's inculpatory statement involuntary.

The trial court is the "sole and exclusive trier of fact and judge of the credibility of witnesses" and evidence at a hearing on a motion to suppress based on the voluntariness of a confession. *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). We give great deference to the trial court's decision to admit or exclude a confession and will reverse only when the trial court flagrantly abuses its discretion. *Id.*

Article 38.21 of the Texas Code of Criminal Procedure provides that the statements of a person accused of a crime "may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion. . . ." Tex. Code Crim. Proc. art. 38.21. To determine whether a confession

---

[1] Appellant filed a pro se brief in this case. It is well established that appellant is not entitled to hybrid representation. *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim App.2001) ("Appellants are not allowed to have 'hybrid representation' on appeal, in which an appellant and an attorney can present independent points to an appellate court."); *see Marshall v. State*, 210 S.W.3d 618, 620 n. 1 (Tex. Crim. App. 2006) (court refused to address points raised in appellant's pro se brief filed after appellate counsel filed brief on appellant's behalf because appellant had no right to hybrid representation); *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App.1 995) (appellant's pro se supplemental brief filed after brief was filed by appellant's appointed counsel presented nothing for review). We therefore do not consider the arguments appellant made in his pro se brief.

[2] Our record contains neither the first two videotaped interviews, nor the audio recording made when appellant directed the officers to the scene of the crime. Only the fourth videotaped interview was made part of the record.

4

was voluntarily made, we examine the totality of the circumstances. *See Delao*, 235 S.W.3d at 239. A promise made during a police interrogation may render a confession involuntary if it was positive, made or sanctioned by someone with apparent authority, was of some benefit to the defendant, and was of such a character as would likely cause a person to speak untruthfully.[3] *E.g.*, *Garcia v. State*, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994) (en banc) (op. on reh'g). To determine if the alleged promise were likely to influence appellant to speak untruthfully, we must consider whether the circumstances surrounding the promise made appellant inclined to confess to a crime he did not commit. *Id.* General offers to help a defendant are not likely to induce an accused to make an untruthful statement, and therefore will not invalidate a confession. *Id.* (citing *Dykes* v. *State*, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983)).

Here, there is no dispute that all four of appellant's statements were non-custodial interviews. Indeed, according to Cisnero's testimony during the suppression hearing, Cisneros considered appellant to be only a witness to the offense, up to the point that appellant inculpated himself during the fourth interview. Appellant does not direct us to any "promises" made to him during the fourth interview. In fact, any alleged "promises" the officers made in this case were made to appellant as a witness, not as a suspect. Cisneros and Ferguson simply told appellant that he should tell the truth, that cooperating with the investigation would help him, and that they would assist him through the process of being a witness to the offense. Cisneros also explained to appellant that he could have executed a warrant to arrest appellant for making his first false statement, but had not because appellant was being helpful with the investigation and had agreed to be a witness against Lewis and Portier, the two individuals appellant had implicated in the offense. Such statements, even when made to an accused, are not likely to induce him to make a confession. *See id.*; *see also Muniz v. State*, 851 S.W.2d 238, 254 (Tex. (Tex. Crim. App. App. 1993) (stating that general statements made to a suspect that a confession may result

---

[3] We note that appellant does not allege that the inculpatory statement made during his fourth interview was untruthful; rather, he argues he would not have made this statement had the officers not promised him leniency or to help him during the previous three interviews.

in leniency do not render a confession involuntary because they are statements of fact, not promises in exchange for a confession); *Espinosa v. State*, 899 S.W.2d 359, 364 (Tex. App.—Houston [14th Dist.] 1995, pet. denied) (concluding that even specific and unequivocal promises may lack the persuasive impact needed to show they would induce an accused to make an untruthful statement).

The trial court's conclusion that appellant's statement was admissible was not an abuse of discretion. *Delao*, 235 S.W.3d at 238. We overrule appellant's sole issue and affirm the trial court's judgment.

/s/     Adele Hedges
         Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Christopher.

Do Not Publish — Tex. R. App. P. 47.2(b).

6